DUGAN, J.
*229 ¶1 The Pension Board of the Employees' Retirement System of the County of Milwaukee (Board) appeals the trial court's order reversing the Board's decision to uphold the Board's prior revocation of former County employee Dennis Dietscher's pension benefits. It revoked his pension on the ground that his employment was terminated for "fault or delinquency."[1]
*230 The trial court found that the Board's application of the "fault or delinquency" provision was arbitrary, oppressive, and unreasonable and contrary to law and reversed the decision and remanded the matter to the Board.
¶2 On appeal, we review the Board's decision, not that of the trial court. The issues on appeal focus on the Board's interpretation and application of two sections of Milwaukee County's pension ordinance. The first ordinance, § 4.1(2)(a) provides for a special type of normal pension,[2] known as the Rule of 75. That Rule provides that a County employee is immediately eligible to receive a normal pension if the sum of the employee's age and years of credited County service equals or exceeds *449 seventy-five. The second ordinance, § 4.5(1) provides, in part, that a County employee "shall be eligible for a deferred vested pension [DVP] if his employment is terminated for any cause, other than fault or delinquency on his part[.]"
¶3 On appeal, the Board argues that this court should affirm its revocation of Dietscher's pension because it reasonably interpreted and applied the ordinances to determine that Dietscher was ineligible to receive a County pension. We disagree.
*231 ¶4 On certiorari and on appeal, the Board's arguments are ever changing. Before the trial court, the Board argued that it rationally concluded that Dietscher was in a DVP status when he retired and that he was terminated for fault or delinquency. The Board's sole argument, that Dietscher was in a DVP status, was its "gap" theory described below.
¶5 By contrast, the Board now makes three arguments before this court-two of which were not made before the trial court. The Board argues as follows: (1) pursuant to § 4.5(1), Dietscher was eligible for a DVP because he was "discharged for cause," but because he was terminated for fault or delinquency he forfeited his eligibility for a DVP; (2) Dietscher was eligible for a DVP because there was a "gap" in his County service between the date when his employment ended and the date when he completed his retirement paperwork; and (3) ERS Rule 807 provides an independent source of jurisdiction for the Board to revoke Dietscher's pension.[3]
*232 ¶6 As we explain below, it is difficult to discern from the Board's decision what its reasoning was when it decided to revoke Dietscher's pension. Regardless, the Board's ever-changing arguments demonstrate that once it determined that Dietscher's conduct constituted fault or delinquency it also concluded, as it states in its brief, that "it would be grossly irresponsible for the Board to read the DVP Provision in a manner that allows Dietscher to collect one more cent from the ERS Trust and thereby add to the County's growing deficit." We conclude that the Board's decision and arguments show that the Board sought to find a way to comply with the County Executive's impassioned plea to find any avenue available to terminate Dietscher's pension.[4] Its decision was outcome oriented-to devise a means to revoke Dietscher's pension. To accomplish that outcome, the Board did not interpret the plain language of the ordinance and the rules. As a result, its decision was *450 arbitrary and unreasonable and represented its will and not its judgment.
¶7 For the reasons stated below, we affirm the trial court's order reversing the Board's decision that upheld the Board's earlier revocation of Dietscher's pension.
¶8 Further, Dietscher asserts that this appeal is frivolous and has filed a motion for fees and costs pursuant to WIS. STAT. RULE 809.25(3) (2017-18).[5]
*233 BACKGROUND
¶9 Dietscher began his employment with Milwaukee County in September 1986. He was consistently employed in a supervisory position in the Risk Management Division of the County's Department of Administrative Services.
¶10 On February 19, 2014, Dietscher was arrested on several felony charges related to allegations of official misconduct, accepting bribes, and lying in connection with the hiring of contractors between 2009 and 2013. On February 20, 2014, the County placed Dietscher on paid administrative leave, "pending a fact-finding investigation into allegations relating to possible violations of Milwaukee County Civil Service Rules."
¶11 On February 28, 2014, Dietscher filed an emergency retirement application with the Division of Employee Benefits Employees' Retirement System (ERS). He elected a retirement date of March 1, 2014, and he completed his retirement paperwork on March 19, 2014.
¶12 On March 20, 2014, the Department of Human Resources prepared a report stating that Dietscher had "terminated" his employment to "retire" with an effective date of February 28, 2014. The ERS processed Dietscher's retirement application and by letter dated April 28, 2014, an ERS manager acknowledged that Dietscher's retirement was effective on March 1, 2014. At the Board's meeting on May 21, 2014, an ERS manager reported Dietscher's retirement to the Board. Dietscher began receiving retirement benefits.
¶13 On June 28, 2016, Dietscher entered guilty pleas to two counts of felony misconduct in office and was sentenced to prison. On October 10, 2016, the *234 County requested that the Board revoke Dietscher's previously granted pension because his guilty pleas constituted "fault or delinquency" under the pension ordinance and rules. However, at its October 26, 2016 meeting, the Board voted to continue Dietscher's pension benefits.
¶14 By letter dated October 31, 2016, the County Executive asked the Board to reconsider its decision. The County Executive's letter stated that his administration had "retained counsel who researched any avenues available to terminate and recover these payments." The letter further stated, "Our attorney advised and proposed that a consideration of pension termination could be argued under the Fault and Delinquency standard in Section 807 of the Milwaukee County Rules of the Employee's Retirement System[.]"
¶15 On November 21, 2016, the Board heard Dietscher's case again and this time decided to revoke his pension. It also directed Retirement Plan Services (RPS) to stop Dietscher's benefits and recover the payments previously made to him. The Director of RPS sent Dietscher a letter notifying him that he was required to repay $186,059.15.
¶16 On January 18, 2017, Dietscher appealed the Board's decision. On April 26, *451 2017, the Board heard his appeal and on May 10, 2017, the Board issued a decision upholding its previous revocation of Dietscher's pension benefits. Dietscher filed a petition for certiorari review in the trial court and in a written decision, the trial court reversed the Board's decision. This appeal followed.
DISCUSSION
¶17 On appeal, the Board acknowledges that Dietscher initially qualified for retirement under the *235 Rule of 75. However, it argues that Dietscher forfeited his pension under § 4.5(1) because his employment was terminated for fault or delinquency and for that reason the Rule of 75 no longer applied; that this court should affirm its termination of Dietscher's pension because as a result of a "gap" between his active service and the date he completed his retirement paperwork Dietscher only qualified for a DVP; and that ERS Rule 807 provides an independent source of jurisdiction for the Board to revoke Dietscher's pension. We will address each argument in sequence.
¶18 For the reasons stated below, we conclude that the Board's interpretation of § 4.5(1) is contrary to the plain language of the ordinance.[6] Further, the Board's decision consists of contradictory and inconsistent findings and conclusions and relies on the County's assertions, without any rational analysis or legal support.
¶19 We conclude that because the Board sought to find a way to comply with the County Executive's impassioned plea to find any available avenue to terminate and recover Dietscher's pension benefits, that the *236 Board's decision was arbitrary and unreasonable, and represented its will, rather than its judgment.
I. The standard of review and the law regarding the interpretation of ordinances and rules
¶20 This case comes before us as a common law certiorari review of the Board's May 10, 2017 decision upholding its prior revocation of Dietscher's pension. On certiorari review, we review the decision of the Board and not that of the trial court. See State ex rel. Harris v. Annuity & Pension Bd. , 87 Wis. 2d 646, 651, 275 N.W.2d 668 (1979).
¶21 This court reviews the record compiled by the Board to determine: (1) whether the Board kept within its jurisdiction; (2) whether the Board proceeded on a correct theory of law; (3) whether its action was arbitrary, oppressive, or unreasonable and represented its will and not its judgment; and (4) whether the evidence was such that the Board might reasonably make the order or determination in question. See Ottman v. Town of Primrose , 2011 WI 18, ¶35, 332 Wis. 2d 3, 796 N.W.2d 411.
¶22 "Wisconsin courts have repeatedly stated that on certiorari review, there is a presumption of correctness and validity to a municipality's decision." Id. , ¶48. However, it does not follow "that affording the *452 municipality a presumption of correctness eviscerates meaningful review." Id. , ¶51.
¶23 Generally, the interpretation and application of an ordinance to an undisputed set of facts is a question of law. Id. , ¶55. A reviewing court will defer to *237 a municipality's own interpretation and application of its own ordinance, but a reviewing court still applies a "critical eye," rather than blindly accepting the municipality's interpretation. Id. , ¶¶60, 61 (citation omitted). "A court will not defer to an interpretation that is unreasonable." Id. , ¶61. For example, this court will not defer to an interpretation that is contrary to the law; clearly contrary to the intent, history, or purpose of the ordinance; without a rational basis; or directly contravenes the words of the ordinance. See id ., ¶62.
¶24 Courts apply the same rules to construe statutes and municipal ordinances. Bruno v. Milwaukee Cty. , 2003 WI 28, ¶6, 260 Wis. 2d 633, 660 N.W.2d 656. "[T]he purpose of statutory interpretation is to determine what the statute means so that it may be given its full, proper, and intended effect." State ex rel. Kalal v. Circuit Court for Dane Cty. , 2004 WI 58, ¶44, 271 Wis. 2d 633, 681 N.W.2d 110. "Statutory language is read where possible to give reasonable effect to every word, in order to avoid surplusage." Id. , ¶46. " '[W]hen a court construes an ordinance or statute, words must be given their common meaning.' " Bruno , 260 Wis. 2d 633, ¶8, 660 N.W.2d 656 (citation omitted).
II. The Board's May 10, 2017 decision
¶25 In its May 10, 2017 decision, the Board stated that its decision to revoke Dietscher's pension was not based on the fact that his illegal conduct began in 2009. After clearly stating that its decision was not based on that fact, it is difficult to discern what the Board's rationale was for reaching its decision. It stated that in November 2016, after reconsidering the issue of Dietscher's pension, it "determined that [Dietscher] was not eligible for a pension benefit as his *238 employment had been terminated due to fault or delinquency." Inconsistently, the Board also found that the County did not "fire" him.[7] The decision also does not discuss ERS Rule 807 as providing an independent source of jurisdiction for the Board to revoke Dietscher's pension.[8]
Fault or delinquency
¶26 In its decision, the Board first addressed whether Dietscher's conduct constituted fault or delinquency. It concluded that his "conduct is considered fault or delinquency under the Ordinances and Rules." After finding that Dietscher's conduct constituted fault or delinquency, the Board stated that "the next issue is whether his termination was due to fault or delinquency." It then stated that "[t]here are sufficient facts for the [Board] to conclude *453 that [Dietscher's] employment was effectively terminated on February 20, 2014. Accordingly, the [Board] finds that, based on the County's *239 determination that [Dietscher's] employment was terminated due to his arrest, [Dietscher's] termination was due to fault or delinquency."
The "gap"
¶27 The Board went on to state "[b]ecause of the findings and conclusions described above, the [Board] also finds that [Dietscher] was ineligible for a normal retirement and is a deferred vested member." Next, the Board stated that there was a "gap" between Dietscher's active service and his retirement, which made Dietscher ineligible for a normal retirement. It stated that the gap was between February 28, 2014 and March 19, 2014.[9]
¶28 The Board also found that Dietscher's emergency retirement application was filed on February 28, 2014, and his final retirement paperwork was not completed until March 19, 2014. The Board went on to state, "Normal retirement under [§ 4.1] is only available for members who retire directly from active service. If a member has a gap between the member's termination of employment and retirement, the member is considered a deferred vested member under [§ 4.5(1) ]." The Board went on to conclude that "[b]ecause [Dietscher] had a gap period between his termination of employment and retirement he is considered a deferred vested member under [§ 4.5(1) ]." It then *240 stated that as a DVP member, Dietscher was subject to the fault and delinquency standard.
The Rule of 75
¶29 In its decision, the Board responded to Dietscher's argument that he retired under the Rule of 75 stating:
RPS allowed [Dietscher] to retire under the Rule of 75 with a backdrop form of benefit, which are both only available to members who retire directly from active County service. However, at the time [Dietscher] retired, he had not yet been convicted of any felonies. Therefore, the [Board] finds that his ability to retire under the Rule of 75 with a backdrop was voided once he was convicted of felonies that constitute fault or delinquency.
(Some capitalization omitted.)
III. The Board's new interpretation of § 4.5(1) is contrary to the plain language of the ordinances
¶30 We conclude that the plain language of § 4.5(1) is clear when creating a DVP. It first provides that an employee is eligible for a DVP if the employee's employment with the County is "terminated for any cause, other than fault or delinquency on his part." Pursuant to the phrase "any cause," the employee's termination of employment may be voluntary or involuntary.[10] Reading the language of this provision as a *241 whole, it is clear that any employee who is discharged for fault or delinquency-is never eligible for a DVP. *454 See Kalal , 271 Wis. 2d 633, ¶46, 681 N.W.2d 110.[11]
¶31 The second requirement for an employee to be eligible for a DVP is that the employee "elects not to withdraw any part of his membership account." The third requirement is that "his pension when he qualifies for a normal retirement as defined in § 4.1 is at least ten dollars ... per month." Section 4.5(4) also states that "[p]ayment of a [DVP] shall commence as of the member's normal retirement date[.]" This language provides that a DVP does not apply to a member who leaves County employment and immediately elects to receive pension benefits. It also states that a member with a DVP must wait to receive his or her DVP benefits until "the member qualifies for normal retirement as defined in section 4.1."
¶32 Thus, under the plain language of § 4.5(1), an employee with a minimum of five years of County service[12] whose employment is not terminated for fault or delinquency is eligible for a DVP when that employee leaves County employment prior to qualifying for a normal retirement under § 4.1, if the employee elects not to withdraw any part of his or her membership account at that time. As history reflects, the vast majority of such employees will be eligible for a DVP because they voluntarily leave their employment with *242 the County. By contrast, an employee whose employment is terminated for fault or delinquency, is never eligible for a DVP.
¶33 By contrast to the plain language of § 4.5(1), on appeal the Board argues that pursuant to § 4.5(1) Dietscher was eligible for a DVP because his employment was terminated for cause. It then argues that because the Rule of 75 does not apply to an employee who is eligible under § 4.5(1), Dietscher was only eligible for a DVP. It further argues that because Dietscher was eligible for a DVP, his pension could be forfeited if he was terminated for fault or delinquency. The Board then argues that it properly revoked Dietscher's pension because his conduct constituted fault or delinquency.[13]
¶34 With this new argument, the Board attempts to explain its written decision. However, like its decision, the Board's arguments are contradictory and inconsistent. As noted, on appeal the Board concedes that Dietscher was qualified under the Rule of 75 and was eligible for a normal pension. It then makes the convoluted argument that "[o]nce an employee qualifies under the Rule of 75, the member is eligible for a normal pension, unless that member was terminated for cause, in which case they are not eligible for a normal pension, but are instead only eligible for a DVP[.]" In this circuitous manner, the Board argues that although Dietscher was qualified under the Rule of 75, his termination for cause made him only eligible *243 for a DVP. However, the Board concedes that there is no language in the Rule of 75 that states that a member who qualifies for a normal retirement under the Rule of 75 forfeits that retirement if the *455 member's employment is terminated for cause, let alone for fault or delinquency.
¶35 The Board's argument incorrectly dissects the phrase in § 4.5(1), "is terminated for any cause, other than fault or delinquency on his part." It begins by arguing that under the DVP provision, "an employee who is terminated for any cause is eligible for a DVP." The Board then argues that "any cause" in § 4.5(1) must mean something more than voluntarily leaving employment. It asserts that the phrase means some specific grounds or basis for discharge. The Board then argues that any employee who is terminated (discharged) for cause is eligible for a DVP. It then asserts that because Dietscher was eligible for a DVP, he was then subject to the forfeiture provisions in § 4.5 and because he was terminated for fault or delinquency, the Board properly revoked his pension.
¶36 We conclude that the Board's argument is unreasonable and inconsistent with the principles of statutory interpretation expressed in Kalal . First, the Board's new interpretation is contrary to the plain language of the ordinance. As noted, § 4.5(1) actually reads in relevant part: "a member shall be eligible for a [DVP] if his employment is terminated for any cause , other than fault or delinquency on his part" (emphasis added). The ordinance plainly states that any member whose employment was terminated for fault or delinquency is not eligible for a DVP. Phrased somewhat differently, being terminated for fault or delinquency does not qualify a member for a DVP-it disqualifies the member. The Board's interpretation of § 4.5(1)
*244 demonstrates that the Board was trying to devise a means by which it could assert that Dietscher was only eligible for a DVP, so that it could revoke his pension.
¶37 Additionally, under the Board's new interpretation, an employee must initially be discharged for misconduct to be eligible for a DVP. As noted, the Board's interpretation is contradicted by the plain language in § 4.5(1). Moreover, the Board's new interpretation reads "any" out of the phrase "any cause" and reads into § 4.5(1) the requirement that an employee must be terminated for cause amounting to a basis for discharge in order to qualify for a DVP. Such an interpretation is contrary to the principles of statutory construction which require that, where possible, all the words of an ordinance be given their ordinary meaning, see Kalal , 271 Wis. 2d 633, ¶¶44, 46, 681 N.W.2d 110, and that words not be added to an ordinance, see Bruno , 260 Wis. 2d 633, ¶14, 660 N.W.2d 656.
¶38 Such an interpretation would also lead to an absurd result. See Milwaukee District Council 48 v. Milwaukee Cty. , 2017 WI App 82, ¶23, 379 Wis. 2d 322, 905 N.W.2d 140, aff'd , 2019 WI 24, 385 Wis. 2d 748, 924 N.W.2d 153 (stating that "[o]rdinances, like statutes, must be interpreted to avoid absurd results"). If the Board's interpretation were correct, any employee with five years of service to the County, who voluntarily terminated his or her employment with the County, would never be eligible for a DVP because under the Board's interpretation of § 4.5(1), only employees terminated for cause amounting to discharge are eligible for a DVP. Thus, an employee who otherwise qualifies for a DVP, but simply leaves County employment before reaching the age of a normal retirement, would never be eligible for a DVP. The County's past practices show that many employees *245 with a minimum of five years of County service have retired voluntarily before reaching the age for a normal retirement and have a DVP available when they reach the normal retirement age, unless their employment was terminated for fault or delinquency. *456 ¶39 When the plain meaning of an ordinance is clear, as it is here, we are compelled to simply apply its plain meaning to the facts before us. See Bruno , 260 Wis. 2d 633, ¶7, 660 N.W.2d 656. Still, we further note that, on appeal the Board contends that its new interpretation of § 4.5(1) effectuates the provision's underlying purpose. The Board's argument suggests that an underlying purpose of § 4.5(1) is to recognize honorable service as an implied indispensable requisite for entitlement to a County pension.
¶40 However, in devising its interpretation, the Board does not engage in a neutral and fair analysis. Rather, the Board makes the following impassioned statement in support of its interpretation, which shows that the Board's decision resulted from its outcome oriented approach to the issue presented by Dietscher's pension, rather than its judgment:
[p]erhaps more outrageous, limiting the DVP Provision to involuntary terminations would force an already overwhelmed ERS to support thieves who steal from the County coffers to line their own pockets through conduct that unquestionably met the forfeiture standard, thereby rendering the provision toothless. The County's annual required contribution to sustain the ERS trust has exploded from less that $1 million in 2000 to more than $50 million in 2018. Given current actuarial assumptions, the contribution is projected to exceed $75 million in another ten years. The County's contribution to the ERS trust continues to grow exponentially, *246 in part, due to unusually generous benefits available to members, including the Rule of 75 and the 'backdrop' benefit from which Dietscher asserts he is entitled to benefit. The County and its taxpayers have been impacted enough by Dietscher's misconduct, and it would be grossly irresponsible for the Board to read the DVP Provision in a manner that allows Dietscher to collect one more cent from the ERS trust and thereby add to the County's growing deficit.
(Emphasis added, footnotes and some capitalization omitted.) The Board's argument is contrary to the plain language of the ordinance and, therefore, we reject it. Moreover, the Board's argument shows that it was attempting to devise a new means by which its desired outcome-the termination of Dietscher's pension-could be fulfilled, rather than interpreting and applying the language of the County's pension ordinance.
¶41 We conclude that pursuant to the plain language of § 4.5(1), if Dietscher's employment with the County was terminated for fault or delinquency he could not be eligible for a DVP. Accepting the Board's argument that Dietscher's employment was terminated for fault or delinquency, we conclude that he was not eligible for a DVP. Thus, we conclude that the Board's arguments regarding the meaning of § 4.5(1) fail because they are contrary to the plain language of the ordinance. For these reasons we conclude that the Board's new interpretation of § 4.5(1) is arbitrary and unreasonable, and represents its will and not its judgment. Further, because the Board's interpretation directly contravenes the plain language in the ordinance, its interpretation of the ordinance is unreasonable. See Ottman , 332 Wis. 2d 3, ¶62, 796 N.W.2d 411.
*247 IV. The Board's "gap" theory is merely another attempt to devise a new means to exercise its will to revoke Dietscher's pension
¶42 The Board's second argument on appeal, presented in the alternative, is that there was a "gap" between Dietscher's last day of work and the date that he *457 completed his retirement paperwork. It argues that as a result of that "gap," Dietscher did not retire from "active service," which resulted in his retirement status being a DVP under § 4.5(1) and, therefore, the Rule of 75 did not apply to him. As a result, the Board contends Dietscher was subject to the provisions of § 4.5(1) regarding forfeiture of his pension.
¶43 However, the Board's decision made no reference to any language in the pension ordinance regarding a "gap." It merely concluded that there was a "gap." Without citing any authority, the Board stated that "[n]ormal retirement under [§ 4.1] is only available for members who retire directly from active service." However, "directly from active service" is not a phrase found in the pension ordinance. In interpreting an ordinance, words may not be added to the ordinance. See Bruno , 260 Wis. 2d 633, ¶14, 660 N.W.2d 656.
¶44 Nothing in the ordinance suggests that an employee, who meets the criteria for a normal pension at the time the employee leaves County service, does not actually retire until the paperwork is subsequently completed. In fact, the pension ordinance defines retirement as "termination of employment after a member has fulfilled all requirements for a pension. Retirement shall be considered as commencing on the day *248 immediately following a member's last day of employment[.]" See § 2.19; see also Bruno , 260 Wis. 2d 633, ¶¶15-16, 660 N.W.2d 656 (stating that the definition of "retirement" in § 2.19 is clear and unambiguous; "[t]he ordinance does not confine the term 'retirement' to terminations of county service with immediate eligibility to begin drawing a pension. It requires only that the terminating employee has fulfilled the requirements for a pension.").[14]
¶45 The Board also cites ERS Rule 1049 in support of its argument that because Dietscher did not retire directly from active service, he only qualifies for a DVP. However, that rule merely states, "Active members. For a member who retires directly from active service, retirement effective date means the day after the day the member terminates county employment." To be valid, "retires directly from active service" under Rule 1049 must have the same meaning as "retirement" in § 2.19. "A rule out of harmony with a statute is a mere nullity." Seider v. O'Connell , 2000 WI 76, ¶26, 236 Wis. 2d 211, 612 N.W.2d 659 (citation omitted).
¶46 In its decision the Board also stated, "[a] completed retirement application is required to elect a retirement effective date outside of the emergency retirement process."[15] However, the Board did not cite *249 any authority for its conclusion. "Arguments unsupported by references to legal authority will not be considered." *458 State v. Pettit , 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992).[16]
¶47 Moreover, § 4.5(4) is the only provision in the pension ordinance that requires a member to timely file an application before payment of a pension shall commence. Section 4.5(4) provides, "[p]ayment of a [DVP] shall commence as of the member's normal retirement date, but in no event until timely application for the [DVP] is filed with the board " (emphasis added). No other section of the pension ordinance regarding other types of pensions mentions any delay in filing an application for retirement. Moreover, even § 4.5(4) only deals with the issue of when payment of a pension commences-not the date an employee retires.
*250 ¶48 We further note that Dietscher argues that the absurdity of the Board's "gap" theory and "directly from active service" approach is demonstrated by its application to employees retiring under § 4.4, which involves ordinary disability. He asserts that such an employee may suffer a catastrophic injury that immediately makes the employee totally and permanently incapacitated for further duty. However, approval for the pension would have to await certification by the medical board following a medical examination. He goes on to argue that under the Board's logic here, the "gap" between the totally disabled employee's last day of work and the completion of the application and certification process would limit that employee to a DVP. Under those circumstances, the disabled employee's pension would be payable only upon reaching the age of sixty, or with Board approval, at the age of fifty-five.
¶49 The Board does not refute Dietscher's argument in its reply brief and, therefore, we consider it conceded. See United Co-op. v. Frontier FS Co-op ., 2007 WI App 197, ¶39, 304 Wis. 2d 750, 738 N.W.2d 578 (stating that failure to refute a proposition asserted in a response brief may be taken as a concession). Additionally, we conclude that the Board's "gap" interpretation would create an absurd result. See Milwaukee District Council 48 , 379 Wis. 2d 322, ¶23, 905 N.W.2d 140.
¶50 Based on the foregoing, we conclude that pursuant to § 2.19, retirement means termination of employment after a member has fulfilled all the requirements for a pension. See Bruno , 260 Wis. 2d 633, ¶16, 660 N.W.2d 656. Pursuant to § 2.19, retirement starts "on the day immediately following a member's last day of employment." Under the Rule of 75, an employee fulfills all *251 the requirements for a pension when the age of the member plus the member's years of County service equals seventy-five.
¶51 Thus, we conclude that Dietscher fulfilled all of those requirements when he ended his employment on February 28, 2018. The Board's "gap" theory was again merely an attempt to find a way to force Dietscher into a DVP, so it could revoke his pension on the grounds that he was terminated for fault or delinquency. Therefore, we conclude the Board's decision was *459 arbitrary and unreasonable and represented its will and not its judgment.
V. The Board has conceded that ERS Rule 807 does not provide an independent source of jurisdiction for it to revoke Dietscher's pension
¶52 On appeal, the Board argues that ERS Rule 807 provides an independent source of jurisdiction for it to revoke Dietscher's pension.[17] The Board further argues that ERS Rule 807 mandates review of a member's retirement upon conviction of a felony offense and that, after it had determined that Dietscher's employment was terminated due to fault or delinquency, it was required to revoke his pension.
¶53 In response, Dietscher argues that although the Board may implement and administer a rule in a way that comports with the ordinance, it may not do so in a way that either expands or constricts the ordinance's reach. Citing Basic Products Corp. v. Wisconsin Department of Taxation , 19 Wis. 2d 183, 186, 120 N.W.2d 161 (1963), Dietscher argues, "An administrative *252 rule, even of long duration, may not stand at variance with an unambiguous statute [or ordinance]."
¶54 In its reply brief, the Board does not attempt to refute Dietscher's argument. In fact, it does not even mention ERS Rule 807 in its reply brief. Therefore, we consider the Board to have conceded the issue. See United Co-op ., 304 Wis. 2d 750, ¶39, 738 N.W.2d 578.[18]
VI. The Board's appeal was not frivolous
¶55 We next address Dietscher's motion, filed with this court, asserting that the Board's appeal was frivolous and that he is entitled to costs, fees, and attorney's fees, pursuant to WIS. STAT. RULE 809.25(3). We disagree.
¶56 In his motion for sanctions, Dietscher asserts that the Board's entire appeal was frivolous. Under WIS. STAT. RULE 809.25(3)(c)2., before this court can impose sanctions for filing a frivolous appeal, we must find that the Board or its counsel "knew, or should have known, that the appeal or cross-appeal was without any reasonable basis in law or equity and could not be supported by a good faith argument for an extension, modification or reversal of existing law." As explained in Baumeister v. Automated Prods ., Inc. , 2004 WI 148, ¶26, 277 Wis. 2d 21, 690 N.W.2d 1, "[f]rivolous action *253 claims and frivolous appeals present a serious cause for concern. We have found this to be an especially delicate area since it is here that ingenuity, foresightedness and competency of the bar must be encouraged and not stifled." (citation and one set of quotation marks omitted). "Consequently, when a motion is made to declare an appeal frivolous, we will resolve all doubt in favor of finding the claim nonfrivolous." Id. , ¶25. Thus, we may not award fees under RULE 809.25(3) unless the entire appeal is frivolous. A single frivolous argument is not enough to find the appeal frivolous.
¶57 We conclude that the Board's entire appeal is not frivolous. First, in his motion, Dietscher fails to offer any analysis *460 of how each and every argument advanced by the Board was frivolous.[19] Additionally, before the Board and the trial court, Dietscher argued that he properly filed his emergency retirement application. In part, the trial court relied on that argument when it stated that "the Board did not properly explain how Dietscher's retirement on February 28, 2014 was not 'directly from active service.' " As noted above, February 28, 2014, was the date that Dietscher filed his emergency retirement application. On appeal, Dietscher conceded that he was not eligible to file the emergency retirement application. Therefore, when Dietscher filed his subsequent application for retirement on March 19, 2014, there was a gap between his last day of work and the date he filed his retirement application. Further, although we reject the Board's "gap" theory in this decision, we conclude that the argument is not frivolous. Because we find that one of *254 the Board's arguments is not frivolous, we need not analyze any of its other arguments for frivolousness.
¶58 For these reasons, Dietscher's motion for the award of frivolous fees and costs on appeal is denied.
CONCLUSION
¶59 For the reasons stated above, we conclude: (1) that the Board's interpretation of the County's Pension Ordinance contravenes the plain language of the Ordinance; (2) that pursuant to the plain language of § 4.5(1) and the Board's assertion that Dietscher was discharged for fault or delinquency, he was never eligible for a DVP; (3) that the Board's "gap" theory is contrary to the plain language of the ordinance and the facts of this case; (4) that the Board conceded that ERS Rule 807 does not provide an independent source of jurisdiction for the Board to revoke Dietscher's pension; and (5) that, as the Board concedes, Dietscher qualified for a normal retirement under the Rule of 75 and, therefore, the fault and delinquency provision in § 4.5(1) did not apply to him. Further, we conclude that the Board's decision was arbitrary and unreasonable and represented its will and not its judgment. For all these reasons, we affirm the order.[20]
By the Court. -Order affirmed.

The County's Pension Ordinance § 201.24 of the Milwaukee County General Ordinances (MCGO) contains the ordinance provisions relevant to the pension issues in this case. Throughout this opinion, we cite the sections within the MCGO § 201.24 as "§" followed by the section number. For example, MCGO § 201.24(4.5) is simply cited as § 4.5. Further, Appendix B to the MCGO contains Rules of the Employee's Retirement System that were adopted by the Board. In this opinion, we cite those rules as "ERS Rule" followed by the rule number. For example, ERS Rule 807.
The "fault or delinquency" standard refers to § 4.5(1), which provides that "a member shall be eligible for a deferred vested pension [DVP] if his employment is terminated for any cause, other than fault or delinquency on his part[.]" "Member" refers to an employee covered by the County retirement system. See §§ 2.1 and 2.5. In this decision, we use member and employee interchangeably.

Section 4.1 provides for normal retirement, § 4.1(1)(a) provides for a normal pension, and § 4.1(2)(a) sets forth the Rule of 75 as applicable in this case.

ERS Rule 807 provides in relevant part as follows:
807. - Fault and delinquency. (a) General rule. Pursuant to section 201.24(4.5) of the General Ordinances of Milwaukee County, a member forfeits his right to a [DVP] pension benefit if his employment with the county is terminated due to fault or delinquency on his part.
(b) Fault or delinquency standard. Until section 201.24(4.5) is amended to provide otherwise or the pension board adopts other rules, for purposes of section 201.24(4.5) , a member's employment is considered to be terminated for fault or delinquency on his part if it is terminated due to conduct resulting in a felony offense charge if the circumstances of the charge substantially relate to the circumstances of the member's particular job and the member is ultimately convicted of such felony offense.
(Emphasis added.)

In his letter to the Board dated October 31, 2016, the County Executive stated that his administration had "retained counsel who researched any avenues available to terminate and recover these payments." He also stated, "[Dietscher] should not continue to burden taxpayers and County employees and benefit from his criminal actions by enjoying his backdrop payment ... drawing a monthly pension payment ... and receiving County subsidized health insurance for the rest of his life."

All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

Section 4.5(1) provides that a member is eligible for a DVP if: (1) the member's employment is terminated for "any cause, other than fault or delinquency on his part;" (2) the member "elects not to withdraw any part of his membership account;" and (3) the member's "pension when [the member] qualifies for a normal retirement as defined in § 4.1 is at least ten dollars ($10.00) per month." It further states: "[p]ayment of a [DVP] shall commence as of the member's normal retirement date[.]" Sec. 4.5(4). This language clearly reflects that a DVP does not apply to a member who leaves County employment and immediately elects to receive pension benefits. It also clearly reflects that a member with a DVP must wait to receive his or her DVP benefits until "the member qualifies for normal retirement as defined in section 4.1." See § 4.5(1).

The Board's decision does not explain how Dietscher was terminated when it also found that the County did not fire him. The Board's decision also states alternatively that Dietscher did not resign; that if he did resign, the County did not accept his resignation; the County constructively terminated him on February 20, 2014; that Dietscher voluntarily terminated his employment; and that RPS allowed him to "retire under the Rule of 75." Thus, it is unclear what the Board decided about how Dietscher's employment ended.

ERS Rule 807 provides, in part, that "[p]ursuant to [§ 4.5], a member forfeits his right to a deferred vested pension benefit if his employment with the county is terminated due to fault or delinquency on his part." It also provides, "[i]n the event a member is convicted of a felony offense ... after benefit payments have commenced, the pension board shall review the member's retirement and suspend further payment of benefits if it determines that the member's employment was terminated due to fault or delinquency on his part[.]"

The Board first found that the gap was between the termination of Dietscher's employment on February 20, 2014, when he was constructively terminated, and when he filed for his emergency retirement on February 28, 2014, or March 19, 2014. Later in its decision, without any explanation, the Board eliminated the February 20, 2014 date from its discussion. This is represents another inconsistency in the Board's decision.

Under this language, if an employee's involuntary termination involves conduct that does not constitute fault or delinquency, the employee is eligible for a DVP. By contrast, as noted, if the employee's involuntary termination involves conduct that constitutes fault or delinquency, the employee is not eligible for a DVP.

Further, it does not say that an employee whose employment is terminated for fault or delinquency is not eligible for a normal retirement under § 4.1, including under the Rule of 75, or any other pension under § 201.24.

An employee is eligible for a DVP if he or she has been employed by the County for five years. See § 5.15(1)(b).

As noted above, the Board did not make this argument before the trial court. Before the trial court, the Board's "gap" theory was its sole argument that Dietscher was in a DVP status. Moreover, in its decision, the Board did not articulate such an analysis when it found that Dietscher's status for retirement was a DVP. Rather, it relied on its "gap" theory.

In Bruno v. Milwaukee County , the County argued that to be "retired from the county," a member must leave County service and begin drawing pension payments immediately. Id. , 2003 WI 28, ¶14, 260 Wis. 2d 633, 660 N.W.2d 656 (one set of quotation marks omitted). The court rejected that argument stating that "[t]his interpretation adds words to the definition of 'retirement.' " See id.

In its decision, the Board found that Dietscher was not eligible to use the emergency retirement process. On appeal, the Board argues that Dietscher does not challenge its rejection of his attempt to use the emergency retirement provisions. Dietscher's response brief does not address this contention and, therefore, we deem it conceded. See United Co-op . v. Frontier FS Co-op ., 2007 WI App 197, ¶39, 304 Wis. 2d 750, 738 N.W.2d 578 (stating that failure to refute a proposition asserted in a response brief may be taken as a concession).

For the first time in its reply brief, the Board cites § 4.6, which states in part: "In order to receive a pension, a member shall file with the board a written application therefore on a form prescribed by the board." It then argues that, as a result, retirement cannot occur under § 2.19 until after an employee submits an application.
The Board did not cite § 4.6 in its decision, let alone in its opening appellate brief. We do not consider arguments that are raised for the first time on appeal and particularly when an argument is raised in a reply brief. See Wirth v. Ehly , 93 Wis. 2d 433, 443-44, 287 N.W.2d 140 (1980), superseded on other grounds by statute , Wis. Stat. § 895.52 ; Bilda v. County of Milwaukee , 2006 WI App 57, ¶20 n.7, 292 Wis. 2d 212, 713 N.W.2d 661. However, we note that § 4.6(1) does not refer to "retirement date."

As noted earlier, the Board did not make this argument before the trial court.

The Board also argues that whether Dietscher voluntarily terminated his County employment or his employment was involuntarily terminated does not make a difference because terminated means both voluntary or involuntary termination. Because we conclude that Dietscher did not qualify for a DVP we need not address this issue. For the same reason, we also need not address the Board's argument regarding the interpretation of the Rule of 75.

"[W]e will not abandon our neutrality to develop arguments" for the parties. See Industrial Risk Insurers v. American Eng'g Testing, Inc. 2009 WI App 62, ¶25, 318 Wis. 2d 148, 769 N.W.2d 82.

Our decision should not be interpreted as a ruling on whether the Board can seek to modify the pension ordinance to effectuate its intentions expressed in this case. Like the trial court, we are bound by the express language of the current Ordinance.