COURT OF APPEALS
DECISION
DATED AND FILED

April 23, 2026

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2025AP1504**

STATE OF WISCONSIN

Cir. Ct. No. 2020PR45

IN COURT OF APPEALS
DISTRICT IV

---

IN RE THE ESTATE OF TARYN P. GREENDEER:

THERESA ANNE CAREY,

APPELLANT,

V.

TAI P. SEEFF AND STELLA B. GREENDEER,

PERSONAL REPRESENTATIVES-RESPONDENTS.

---

APPEAL from an order of the circuit court for Vernon County: TIMOTHY J. GASKELL, Judge. *Affirmed.*

Before Blanchard, Kloppenburg, and Nashold, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Attorney Theresa Anne Carey appeals an order that awarded her $11,657.05 in fees and costs for her legal work on the estate of Taryn Greendeer. Carey asks that we reverse and remand for a new hearing at which she could provide evidence that she is entitled to at least $27,500. Tai Seeff and Stella Greendeer, personal representatives of Taryn's estate, argue that Carey's appeal lacks record and case law support and have filed a motion seeking attorney fees and costs for what they assert is a frivolous appeal. We affirm the circuit court order and deny the motion.[1]

## BACKGROUND

¶2 The following facts are undisputed unless otherwise noted.

¶3 Taryn died testate on June 26, 2020. Taryn's will nominated her daughters Seeff and Stella to be personal representatives of her estate. The will was admitted into informal administration on October 9, 2020. Carey entered a

---

[1] Because the decedent, one of the personal representatives, and another relevant person share a surname, we refer to them by their first names.

Carey also appeals the part of the circuit court order that awarded fees and costs to Attorney Celeste Gibson for Gibson's work on Taryn's estate. But, Gibson has not appealed the award, and the personal representatives argue that Carey lacks standing to do so. In reply, Carey asserts that the court awarded only a portion of the fees requested for Gibson's work and "identif[ied]" the unawarded fees requested for Gibson's work "as a cost to" Carey, and "[a]s such, the burden of the cost for services provided by … Gibson … shifted to" Carey. Carey argues that she is consequently aggrieved by the Gibson award, citing *Koller v. Liberty Mutual Insurance Co.*, 190 Wis. 2d 263, 266, 526 N.W.2d 799 (Ct. App. 1994) ("The right to appeal is limited to parties aggrieved in some appreciable manner by the judgment. A person is aggrieved if the judgment bears directly and injuriously upon [the person's] interests." (citation omitted)). However, Carey fails to develop an argument supported by citation to the record that the court's award of fees to Gibson shifted "the burden of the cost" of any of Gibson's services to Carey. For at least this reason, we reject Carey's arguments about the fee award to Gibson and do not further address those arguments or the facts regarding Gibson's representation of the estate.

notice of appearance in the matter as legal counsel for the personal representatives on January 27, 2021.

¶4      The estate consisted of bank accounts, personal property, and two pieces of real estate.  One piece of real estate was titled as survivorship marital property with Taryn's ex-husband, William Greendeer, whom she had divorced in tribal court and who died approximately four months after Taryn.  Both pieces of real estate generated income to the estate after Taryn's death, but no tax returns reporting this income were filed for 2020, 2021, 2022, or 2023.  Between April 2022 and April 2024, Carey filed three petitions for extension of time to complete the estate.

¶5      On January 7, 2025, over four and one-half years after Taryn's death, Attorney Justin Peterson filed a notice of appearance in the matter as new counsel for the personal representatives, in place of Carey.

¶6      On January 9, 2025, Carey filed a motion for judgment for fees earned, along with a proposed final estate account and supporting attachments.  In her motion, Carey asserted that she had entered a notice of appearance in the matter "with the understanding that [she] would charge a reduced hourly rate of $100/per hour for work done from January 27, 2021 forward, which was agreed to by the personal representatives."  Carey also asserted that, "subsequent to [the] agreement for the reduced hourly rate," she "offered to cap [her] fees at 2% of the gross" value of the estate.  Carey further asserted that, because her fees as calculated by the hour ultimately exceeded the 2% amount, she moved the circuit court to award her attorney fees at the 2% amount.  She calculated that 2% amount to be $16,343.49.

¶7     The personal representatives filed a response to Carey's motion in May 2025, requesting judicial review under WIS. STAT. § 851.40(2) (2023-24) to determine the reasonableness of Carey's requested fees.[2]  They argued that, because Carey had allegedly made misleading statements and engaged in delays throughout the course of her representation, "the personal representatives are uncomfortable paying the demanded attorney's fees without judicial review … to determine if they are reasonable."  The personal representatives acknowledged that Carey was required to address "issues clearing the title to the [e]state's land relating to [Taryn's] divorce from William," but they asserted that William's "estate … and its attorney … were cooperative [in] resolving the issue," and that Taryn's estate otherwise lacked any complex or novel issues.

¶8     The personal representatives supported their request with a sworn declaration by Seeff, in which she averred as follows.  Carey told the personal representatives "that her fees would be the lesser of an hourly rate or 2% of the [e]state's value," but the personal representatives never received a fee agreement from Carey.  Nor, before filing her motion for fees, did Carey ever provide an itemized bill or invoice during the course of her representation, despite the fact that the personal representatives and beneficiaries had requested itemized bills or invoices.  Throughout Carey's representation, the estate "suffered unnecessary delays and setbacks despite [the personal representatives'] repeated requests for … Carey … to complete tasks in a timely manner and to meet the [circuit] [c]ourt's administrative deadlines."  The personal representatives "requested numerous

---

[2]  All references to the Wisconsin Statutes are to the 2023-24 version.

times to change attorneys and accountants," but Carey told them "that it was too late to change counsel and that the [c]ourt would likely not approve it."

¶9     Carey filed a reply in which she asserted that she mailed Seeff a written fee agreement when she filed her notice of appearance, but that Carey never received a signed copy back.  Carey further asserted that there were numerous reasons that Taryn's estate "took significant time and effort" for Carey to resolve, including: William's death and the need to negotiate with his estate regarding land division; resolving distribution of assets from Taryn's father's estate; addressing a Medicare lien; dealing with burial paperwork; working with authorities in Italy regarding the bequest of an antique shawl to Taryn's sister; dealing with a GoFundMe matter and mishandling of funds;[3] "dealing with" Taryn's small business; managing the personal representatives' request to set up an LLC; communicating with individuals that Seeff asked her to speak to; and difficulty with obtaining complete and accurate documentation from the personal representatives.  Carey also described difficulties that she encountered working with Seeff regarding the estate.

¶10     The day before the scheduled June 25, 2025 circuit court hearing on attorney fees, Carey submitted a "corrected" invoice to the court requesting approximately $27,500 in attorney fees and costs, which she represented was based on her work calculated at a rate of $100 per hour.

---

[3] "GoFundMe is a company that offers an online platform for individuals to raise funds for an objective by 'crowdfunding' their campaigns via individual donations from a vast network of people across the internet." *State v. Cotton*, 13 N.W.3d 412, 415 n.2 (Minn. 2024).

¶11    At the hearing, the circuit court asked Carey how she would like to proceed.  Carey and the personal representatives' attorney both said that they would not present testimony or evidence, but that they would answer any questions that the court might have.  The court proceeded with its questions and consideration of the factors set forth in WIS. STAT. § 851.40(2) to determine what is a just and reasonable attorney fee.  Noting that no signed fee agreement was presented to the court, the court found that "Carey's fee agreement with the estate was that she was going to either bill at $100 an hour or her fee would be 2[%] of the gross estate, whichever was less," and that the 2% rate results in the lesser of the numbers.  We provide the details of the court's consideration of the § 851.40(2) factors in the discussion that follows.

¶12    The circuit court offered Carey and the personal representatives' attorney an opportunity "to say anything in summary based upon the [c]ourt's comments."  We summarize Carey's comments in the discussion below.  After hearing those comments and taking a brief recess, the court ruled that, based on its consideration of the statutory factors, it was awarding Carey attorney fees in the amount of 1.5% of the gross value of the estate.  The court stated that it determined this number to be "fair and reasonable for … Carey's fees in this matter."  The court entered a written order consistent with its oral ruling, awarding Carey $11,657.05 in fees and costs.

¶13 Carey appeals.[4]

## DISCUSSION

¶14 Carey argues that the circuit court erroneously exercised its discretion in awarding her attorney fees and costs in an amount that equaled 1.5% of the gross value of the estate.

¶15 An "attorney performing services for the estate of a deceased person in any proceeding under [WIS. STAT.] chs. 851 to 879 … shall be entitled to just and reasonable compensation for such services." WIS. STAT. § 851.40(1). The circuit court "shall consider the following factors in determining what is a just and reasonable attorney's fee" for such services:

> (a) The time and labor required.
>
> (b) The experience and knowledge of the attorney.
>
> (c) The complexity and novelty of the problems involved.
>
> (d) The extent of the responsibilities assumed and the results obtained.
>
> (e) The sufficiency of assets properly available to pay for the services, except that the value of the estate may not be the controlling factor.

---

[4] In her initial appellant's brief, Carey cites a per curiam opinion of this court. In her response to the personal representatives' motion for fees and costs for a frivolous appeal, Carey cites a published opinion, but the language that she purports to quote is not found in that published opinion. Instead, we find it in another per curiam opinion of this court. Per curiam opinions may not be cited in any court of this state as precedent or for persuasive authority except for the limited purposes specified in WIS. STAT. RULE 809.23(3), which are not applicable here. In addition, attorneys are obligated to provide accurate case law citations as part of their duty of candor to this court. Opposing counsel and this high-volume court are hindered through such improper and inaccurate citations.

§ 851.40(2). The attorney seeking payment of fees bears the burden to demonstrate that the amount of fees submitted is reasonable. *Standard Theatres, Inc. v. DOT*, 118 Wis. 2d 730, 748, 349 N.W.2d 661 (1984); *Kolupar v. Wilde Pontiac Cadillac, Inc.*, 2004 WI 112, ¶34, 275 Wis. 2d 1, 683 N.W.2d 58.

¶16     The "decision of what fees are reasonable for an attorney providing services for an estate under WIS. STAT. § 851.40" is committed to the circuit court's discretion. *Bell v. Neugart*, 2002 WI App 180, ¶35, 256 Wis. 2d 969, 650 N.W.2d 52. The circuit court "'properly exercises its discretion if it employs a logical rationale based on the appropriate legal principles and facts of record.'" *Huehne v. Huehne*, 175 Wis. 2d 33, 42, 498 N.W.2d 870 (Ct. App. 1993) (quoted source omitted). Moreover, "'we may search the record to determine if it supports the court's discretionary decision.'" *State v. Osornio*, 2025 WI App 53, ¶15, 418 Wis. 2d 174, 25 N.W.3d 645 (quoted source omitted). "When an issue of law arises while we are reviewing a circuit court's exercise of discretion," we review that issue de novo. *McReath v. McReath*, 2011 WI 66, ¶22, 335 Wis. 2d 643, 800 N.W.2d 399. When an exercise of discretion involves findings of fact, we accept the circuit court's findings unless clearly erroneous. *Id.*

¶17     We now present pertinent details from the fees hearing and then analyze the circuit court's ruling considering the factors set forth in WIS. STAT. § 851.40(2).

¶18     Before issuing its ruling, the circuit court emphasized that the court was "not going to get into all of the back and forth that went on between the parties," and that it was not "interested in the finger pointing and why one party is responsible or the other party is responsible." The court also indicated that the

administration of the estate appeared to be relatively straightforward and not complex.

¶19    When the circuit court gave Carey the opportunity to respond to the court's comments before issuing its ruling, Carey said the following. Her written fee agreement indicated that her fee would be $100 per hour, and she was accordingly requesting approximately $27,500 based on that rate. After she had worked on the case further, Carey discussed with the personal representatives reducing that amount to a flat fee of 2% of the gross value of the estate, but "technically, we're not permitted to do a percentage of … an estate," and "there has been no agreement about" the flat fee. She did not think the personal representatives had "relied upon" her offer of a flat fee. "[W]e had a lot of complications … with the William Greendeer estate," including a lack of cooperation by William's heirs, and Taryn's estate "didn't get the land division agreement [with William's estate] finalized until late in 2023," which "was one of the biggest causes of the delay." "Once we got that finalized and started really focusing in on finalizing the inventory and whatnot, it wasn't that much longer past that that we were able to at least relatively get close to having that done." The requests for extensions of time to close the estate were not attributable to a "lack of work" on Carey's part, but instead they arose from logistical issues.

¶20    The circuit court found that the estate did not "have a lot of moving parts" and should not have required over four years of time and labor. *See* WIS. STAT. § 851.40(2)(a) (court shall consider the "time and labor required"); § 851.40(2)(c) (court shall consider the "complexity and novelty of the problems"). Specifically, the court found that "the issues that the estate presented … do not seem to be complex or novel at all," and that, "if there is complexity involved in this, it was simply communication or lack thereof between the

parties." The court also implicitly found that the problems that Carey described did not appreciably add to the work required by such a relatively straightforward estate. These findings are supported by the undisputed facts that: the will was not contested; there were only two claims filed against the estate and no disputes among the beneficiaries; and there was no litigation.

¶21 Carey argues that the circuit court "did not appear to" consider the detailed invoice she provided to the court, which she asserts demonstrates the extensive time and labor that the administration of the estate required. However, Carey did not submit an affidavit averring that the hours billed were accurate or that the issues involved required the work reflected in the invoice. While the court did not explicitly discuss Carey's invoice, it was within the court's discretion to determine that the hours billed in the invoice did not reflect the amount of time and labor that the estate actually required, given what the court found were the very limited issues involved. Put differently, Carey fails to show that the court clearly erred in making an implicit finding that the invoice contained entries for unnecessary or inefficient work.

¶22 Carey also argues that the circuit court erroneously disregarded the information included in a different document that she submitted to the court, which explained "the multiple complexities and novel issues encountered" in the case. However, the document cited by Carey is not an affidavit or other sworn statement, and Carey declined to present evidence supporting the explanations in the document at the hearing. Nor, beyond directing our attention to that document, does Carey on appeal provide an explanation, supported by citations to the record, of what complexity and novelty the estate presented.

¶23 The circuit court implicitly found that Carey's probate-related experience and knowledge were limited. *See* WIS. STAT. § 851.40(2)(b) (court shall consider the "experience and knowledge of the attorney"). The court acknowledged that Carey asserted that she had some probate experience in California, but the court noted that she had been the attorney for the probate of only one estate in Vernon County—Taryn's. Carey agreed that this was accurate and generally agreed that she lacked experience, adding only that she was also "involved in" William's estate. Carey argues that the court did not take testimony or evidence on the issue of her experience and knowledge. But, as the party bearing the burden to show that her fees were reasonable, it was Carey's burden to adduce evidence on this issue, and she did not do so. *See **Kolupar***, 275 Wis. 2d 1, ¶34 (attorney seeking fees has the burden to show fees are reasonable and introduce relevant evidence).

¶24 The circuit court noted that, "four years into this, … the estate had not closed out." *See* WIS. STAT. § 851.40(2)(d) (court shall consider the "extent of the responsibilities assumed and the results obtained"). Regarding the failure to exercise responsibilities and obtain results, the court found that no tax returns had been filed for the estate for the years of 2020 through 2024 and that no extensions were requested. Carey makes the broad assertion that she "had significant responsibilities that [she] handled professionally, and successfully." But she cites no record evidence for this assertion, and we reject it on that basis. Carey also asserts that there was "little discussion on this factor at the hearing," but she does not show that the court's comments summarized above do not suffice to support its implicit finding that the responsibilities that Carey actually undertook and the

results that she obtained during her representation of the estate did not justify the amount of fees she requested.[5]

¶25    The circuit court concluded by reiterating its finding that Carey's agreement with the personal representatives was to cap her fees at 2% of the gross value of the estate. However, the court determined that it was appropriate to reduce Carey's fee from 2% to 1.5% of the gross value of the estate, based on the court's consideration of the statutory factors. The court determined that it was relevant that the personal representatives "had to and decided to hire Attorney Peterson's firm" because the estate was not yet closed. We conclude that, based on the evidence before the court and its factual findings, which Carey fails to show are clearly erroneous, and its consideration of the statutory factors, the court made a reasoned determination that 1.5% of the gross value of the estate is a reasonable reflection of the work that Carey had performed on the estate.

¶26    In addition to making the arguments and assertions regarding the specific statutory factors that we have rejected above, Carey more generally argues that the circuit court erred when it failed to take testimony and evidence or make findings of fact on the record. However, as noted above, Carey did not support her motion for fees either with evidence submitted by affidavit or other sworn statement before the hearing, and Carey specifically declined to introduce testimony or evidence at the hearing. In addition, as also explained above, the court did make factual findings on the record based on the evidence before it.

---

[5] The circuit court did not explicitly address the fifth statutory factor: whether the estate had sufficient assets to pay for Carey's services. *See* WIS. STAT. § 851.40(2)(e) (court shall consider the "sufficiency of assets properly available to pay for the services, except that the value of the estate may not be the controlling factor"). However, neither Carey nor the personal representatives argue that the sufficiency of the estate's assets is an issue on appeal.

Accordingly, Carey fails to show that the court erroneously exercised its discretion by failing to take testimony and evidence or to make findings of fact on the record.

¶27 Carey argues that the circuit court did not apply the proper legal standard when it awarded her attorney fees in the amount of a percentage of the gross value of the estate. In support of this argument, Carey cites *Lontkowski Law Office v. Estate of Konopka*, 175 Wis. 2d 100, 498 N.W.2d 853 (Ct. App. 1993). However, as we now explain, this case does not prohibit using a percentage of the estate as a factor in determining attorney fees, so long as the court does not use the percentage of the estate as the controlling factor, and the court did not do that here.

¶28 In *Konopka*, Lontkowski and the personal representative of the estate signed a contract "providing fees at a rate of 4% of the gross inventory of the estate." *Id.* at 101. When Lontkowski presented his bill, the personal representative told the circuit court "that he was 'not satisfied with the amount of attorney fees.'" *Id.* The court made detailed factual findings "relevant to the statutory factors that control attorney fees," and Lontkowski did not contest those findings. *Id.* at 102 and n.1. Lontkowski also "declined to give either an estimate of the hours he spent on the estate, or an opinion as to a reasonable hourly rate." *Id.* at 103. Instead, he argued only that the court should enforce the 4% fee agreement in the contract. *Id.* The court reduced Lontkowski's fees from approximately $23,000 to $7,500. *Id.* at 101.

¶29 This court affirmed, explaining that the contract, which determined fees solely based on the value of the estate, was "contrary to legislatively declared standards." *Id.* at 103; *see also* WIS. STAT. § 851.40(2)(e) ("the value of the estate may not be the controlling factor"). This court also concluded that Lontkowski's

fee was "unreasonable," based on the circuit court's factual findings and consideration of the statutory factors. *Konopka*, 175 Wis. 2d at 103. Contrary to Carey's assertion, this court did not conclude that considering the gross value of the estate in calculating attorney fees, in combination with the other factors in § 851.40(2), is prohibited. Rather, in both *Konopka* and this case, the circuit court rejected the percentage fee agreed to by the parties and reduced the fee based on its consideration of the statutory factors. Carey does not show that the court here acted contrary to *Konopka* or § 851.40(2)(e) when it reduced the award to a lower percentage fee given the factual record before it and its consideration of the statutory factors. Said differently, the court here did not apply an improper legal standard because it did not use the value of the estate as the controlling factor in its award of attorney fees. *See* § 851.40(2)(e) ("the value of the estate may not be the controlling factor").

¶30    In sum, we conclude that Carey fails to show that the circuit court erroneously exercised its discretion in awarding Carey $11,657.05 in fees and costs.

¶31    As stated, the personal representatives have filed a motion in this court for attorney fees and costs based on a claim that Carey's appeal is frivolous under WIS. STAT. RULE 809.25(3). "Whether an appeal is frivolous is a question of law." *Kraemer v. Traun*, 2025 WI App 8, ¶55, 415 Wis. 2d 125, 17 N.W.3d 49 (2024). "Sanctions for a frivolous appeal will be imposed if the court concludes that the party 'knew, or should have known, that the appeal … [had no] reasonable basis in law or equity and could not be supported by a good faith argument for an extension, modification, or reversal of existing law.'" *Id.* (quoted source omitted); RULE 809.25(3)(c). We "'resolve all doubt in favor of finding the claim

nonfrivolous.'" ***Dietscher v. Pension Bd. of Emps.' Ret. Sys. of Milwaukee***, 2019 WI App 37, ¶56, 388 Wis. 2d 225, 932 N.W.2d 446 (quoted source omitted).

¶32     Although we reject Carey's arguments for the reasons discussed above, we are not persuaded that the entire appeal had no "reasonable basis in law or equity." *See* WIS. STAT. RULE 809.25(3)(c)2. Accordingly, we deny the motion for attorney fees and costs under RULE 809.25(3).

## CONCLUSION

¶33     For the reasons stated, we affirm the circuit court's award of attorney fees and costs to Carey, and we deny the personal representatives' motion for attorney fees and costs for a frivolous appeal.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.